**COMMONWEALTH of Pennsylvania, Appellee**

v.

**William GIORDANO, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 2015.

Filed Aug. 5, 2015.

Donna M. DeVita, Public Defender, Scranton, for appellant.

Andrew J. Jarbola, III, Assistant District Attorney, Scranton, for Commonwealth, appellee.

BEFORE: BOWES, J., WECHT, J., and FITZGERALD, J.*

OPINION BY WECHT, J.:

William Giordano appeals his November 25, 2014 judgment of sentence. After careful review, we affirm.

The following factual history is based upon the trial testimony and summarized in the light most favorable to the Commonwealth as the verdict winner. *See Commonwealth v. Matthew*, 589 Pa. 487, 909 A.2d 1254, 1256 (2006). On September 17, 2013, Giordano and his wife went to the Scranton school district administration building. Notes of Testimony ("N.T."), 10/17/2014,[1] at 31. Once there, Giordano became angry and began yelling that his

---

* Former Justice specially assigned to the Superior Court.

1. The cover sheet on the notes of testimony states that the trial was October 17, 2013. However, the actual date of trial was in 2014.

child was being deprived of an education because the child had been sent home from school for failing to abide by the district's dress code. *Id.* at 32–33. Paula Joyce, the secretary to the supervisor of secondary education, responded to Giordano's concerns, but felt threatened because Giordano was wearing a sword in a scabbard and had his hand on the hilt. *Id.* at 33–35. Mary Theresa Ruddy, another secretary in the same office, heard both Giordano and his wife yelling at Ms. Joyce. *Id.* at 151. Ms. Ruddy asked them to lower their voices. *Id.* at 152. Ms. Ruddy also saw the sword on Giordano's belt. *Id.* at 153.

Due to Giordano's demeanor and actions, William King, the superintendent, was called to address the situation. *Id.* at 87. Mr. King provided Giordano with some sample uniforms that his children could wear. *Id.* at 88–89. Mr. King described Ms. Joyce and Ms. Ruddy as nervous and uncomfortable around Giordano. *Id.* at 90. Mr. King also informed Giordano that he could not wear the sword in the building and instructed Giordano not to bring the sword if Giordano returned because weapons are not permitted in school district buildings. *Id.* at 92–93.

The administration building is owned by the school district. *Id.* at 79. In addition to ordinary administrative functions, the administration building also is used for diagnostic testing of children and homebound instruction when a child cannot attend school and that child's instruction cannot be given in the home. *Id.* at 42, 79–81. School registration also occurs in the building. *Id.* at 81. Four or five cooperative education students from the district's high schools work in the building each day. *Id.* at 82–83.

On September 18, 2013, Giordano returned to the administration building. *Id.*

at 37. Giordano again was yelling and angry and stated that he wanted a sweater for his child. *Id.* at 39. Giordano again was wearing the sword and had his hand on the hilt. *Id.* at 40. Ms. Joyce felt unsafe and asked Giordano to remove the sword. Giordano refused, citing his constitutional right to bear arms. *Id.* at 41. Jessica Aquilina,[2] then the supervisor of elementary education, approached Giordano and told him that he could not have the sword in the building. *Id.* at 59. Ms. Aquilina escorted Giordano out of the office. Giordano was argumentative and kept repeating that he had a right to bear arms. *Id.* at 60, 63. Other parents and children were nearby, waiting for meetings. *Id.* at 62. Mr. King again was called to assist and he told Giordano that he had to leave and that Mr. King was not going to have a discussion as long as Giordano had the sword in the building. *Id.* at 95. Ms. Aquilina and Mr. King were able to escort Giordano out of the building. *Id.* at 64. The police were called. *Id.* at 95.

Officer Kevin Davis responded to the call, but arrived after Giordano had left. *Id.* at 106. Officer Davis went to Giordano's home, but Giordano was uncooperative and insisted that Officer Davis "[s]how [Giordano] where it says I can't carry a weapon on school grounds." *Id.* at 107–08. Officer Davis got approval from an assistant district attorney and took Giordano into custody. *Id.* at 108–09, 112.

Giordano was charged with two counts of possessing a weapon on school property, 18 Pa.C.S.A. § 912(b), and two counts of disorderly conduct, 18 Pa.C.S.A. § 5503(a)(4), related to the events of September 17 and September 18. Giordano initially pled guilty, but was permitted to withdraw his plea on July 29, 2014. On September 23, 2014, the Commonwealth

---

2. Ms. Aquilina is also referred to as Jessica Lietzel at times in the record.

and Giordano selected a jury. However, that jury was dismissed before trial began when it was revealed that at least two jurors had read a newspaper article, titled "Sword-wielding parent goes to trial today," about Giordano and the incidents on September 17 and 18. Trial Court Memorandum, 10/6/2014, at 4–8. A new jury was empaneled and trial commenced on October 17, 2014.

At trial, Giordano testified that he went to the administration building because he had problems with the dress code. N.T. at 120–22. Giordano admitted that he was wearing the sword on September 18, but could not recall whether he had it on September 17. *Id.* at 123. However, Giordano stated that he wears the sword all day, every day because "it looked pretty neat to walk around with a sword. Like, everybody carries guns and I don't like guns so I carry a sword instead." *Id.* at 124. However, Giordano claimed that he wore only the scabbard and not the sword when he went to meetings or events at the elementary or middle school. *Id.* at 130–31. Giordano had been to the administration building before September 17, 2013, with his sword. The guard at the door of the administration building never stopped him, and the sword had never caused any explicit concerns. *Id.* at 126–27. Giordano asserted that the sword was decorative and not a weapon. *Id.* at 137–38. However, he also said that he does not wear it any place that posts a sign indicating that weapons are not permitted on the premises. *Id.* at 131, 141–42.

Giordano was found guilty of two counts of possessing a weapon on school property but not guilty of disorderly conduct. On November 25, 2014, Giordano was sentenced on the first count to five years of restrictive intermediate punishment with the first three months in the county jail followed by three months of house arrest.

On the second count, Giordano was sentenced to two years of probation, which was ordered to run consecutively to the first sentence. On December 5, 2014, Giordano filed a motion for reconsideration of sentence and a motion for a new trial, in which he raised claims challenging the weight and sufficiency of the evidence. On December 16, 2014, the trial court denied the motions.

On January 12, 2015, Giordano filed a notice of appeal. On February 2, 2015, the trial court ordered Giordano to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Giordano timely complied.

Giordano raises three issues for our review:

A. Whether there was sufficient evidence to support the verdicts of two counts of possession of weapon on school property?

B. Whether the verdicts were against the weight of the evidence?

C. Whether the lower court imposed harsh and unreasonable sentences due to the fact that it was unaware of all relevant facts and circumstances?

Giordano's Brief at 4.

Giordano first challenges the sufficiency of the evidence for his convictions for possessing a weapon on school property. Our standard of review of a sufficiency of the evidence claim is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for

the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Cahill,* 95 A.3d 298, 300 (Pa.Super.2014) (quoting *Commonwealth v. Estepp,* 17 A.3d 939, 943–44 (Pa.Super.2011)).

Section 912 states, in pertinent part:

**(b) Offense defined.**—A person commits a misdemeanor of the first degree if he possesses a weapon in the buildings of, on the grounds of, or in any conveyance providing transportation to or from any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school.

18 Pa.C.S.A. § 912.

In his sufficiency challenge, Giordano argues that the Commonwealth did not prove that he possessed a weapon "in the building[ ] of [or] on the grounds of ... any elementary or secondary publicly-funded educational institution." 18 Pa. C.S.A. § 912(b). Giordano asserts that the Commonwealth proved only that he carried a weapon into the administration building, which is neither an elementary nor a secondary educational institution. Giordano contends that the administration building cannot be construed to be a school because no teachers are assigned to the building, and no regularly scheduled classes are held there. Giordano's Brief at 17–18.

The Commonwealth responds that, because the school district serves elementary and secondary students and the administration building is part of the school district, the administration building falls within the ambit of this statute. The Commonwealth also notes that students and parents visit the administration building, *inter alia,* for registration, diagnostic testing, cooperative education, and homebound instruction. Commonwealth's Brief at 16.

We have found no precedent that defines "elementary or secondary publicly-funded educational institution" for the purposes of this statute. Therefore, we must construe those terms using our interpretive canons.

We apply the following principles that govern our interpretation of a statutory provision:

When construing [provisions] utilized by the General Assembly in a statute, our primary goal is "to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "Every statute shall be construed, if possible, to give effect to all its provisions." *Id.* However, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* § 1921(b). "Words and phrases shall be construed according to the rules of grammar and according to their com-

mon and approved usage." *Id.* § 1903(a). In other words, if a term is clear and unambiguous, we are prohibited from assigning a meaning to that term that differs from its common everyday usage for the purpose of effectuating the legislature's intent. Additionally, we must remain mindful that the "General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." *Id.* § 1922(1).

*Commonwealth v. Cahill,* 95 A.3d 298, 301 (Pa.Super.2014). It is axiomatic that the plain language of a statute is the best indication of the legislative intent that gave rise to the statute.

Words and phrases shall be construed according to the rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition.

1 Pa.C.S. § 1903(a).

*Commonwealth v. Ali,* 112 A.3d 1210, 1229 (Pa.Super.2015).

First, we look to the plain language of the statute. Black's Law Dictionary defines "educational institution" as "[a] school, seminary, college, university or other education facility." Black's Law Dictionary 554 (8th ed. 2004). We have defined elementary school as follows:

The American Heritage College Dictionary defines "elementary school" as "[a] school for the first four to eight years of a child's formal education, often including kindergarten." American Heritage College Dictionary 452 (4th ed. 2002). It can also be defined more simply as "[t]he first four to eight years of formal education." *Id.*

*Ali,* 112 A.3d at 1230 (2015) (determining whether sentence enhancement for drugs offenses near elementary and secondary schools applied). The same dictionary defines "secondary school" as "[a] school that is intermediate in level between elementary school and college and [usually] offers general, technical, vocational, or college-preparatory curricula." American Heritage College Dictionary 1253 (4th ed. 2002).

 Here, the administration building does not provide the first four to eight years of a child's formal education nor does it offer a general, technical, vocational, or college-preparatory curricula. However, we must also consider that the General Assembly does not intend an absurd result. Although the building that Giordano entered housed primarily administrative functions, homebound instruction is provided in the building. Mr. King testified regarding that instruction as follows:

Often times we have students who might have school phobias. They might have situations where they can't attend school for physical reasons or a physical disability and there is various number [*sic* ] the reasons why a student might not be able to attend school so they are assigned homebound instruction. In some instances it's not appropriate or a safe place to be able to provide the instruction in the home so they'll do it in the administration building. . . . Often times [the instruction is held on] the second floor or even on the first floor. . . .

N.T. at 79–80. The testimony viewed in the light most favorable to the Commonwealth leads to the conclusion that instruction of students occurs in the building. The statute is designed to protect students from the presence of weapons where they are learning. It is clear that students are learning in this administration building. It would be absurd to conclude that the Gen-

eral Assembly intended to protect students who are being taught and learning in a designated school, but not students who are being taught and learning in a building that serves both administrative and educational purposes. Therefore, we conclude that the administration building is encompassed within the definition of an "elementary or secondary publicly-funded educational institution."

Giordano also argues that he did not have the *mens rea* necessary for the crime. The statute does not include a specific scienter requirement. However, Giordano, relying upon a Commonwealth Court case, maintains that possessing weapons on school property is not a strict liability crime and, instead, is subject to 18 Pa.C.S.A. § 302(c), which requires that a person act intentionally, knowingly, or recklessly. Giordano argues that there was no evidence of his *mens rea* and, therefore, the evidence was insufficient. Giordano's Brief at 15–17.

The Commonwealth asserts that possessing a weapon on school property is a strict liability crime for which no *mens rea* is necessary. However, in the alternative, the Commonwealth maintains that Giordano intentionally possessed the sword in the administration building because he argued that he was within his constitutional rights to have the sword. The Commonwealth also asserts that Giordano knowingly or recklessly possessed the weapon because he knew of the prohibition against weapons on school property and he knew or should have known that the administration building was a school building. Commonwealth's Brief at 10–15.

Because section 912 does not contain a specific intent requirement, we must determine whether it is a strict liability crime. Regarding that inquiry, our Supreme Court has stated:

[The] standard of review is *de novo* and scope of review is plenary. *Commonwealth v. Roebuck*, 612 Pa. 642, 32 A.3d 613, 615 (2011) (citation omitted). We note absolute liability criminal offenses are "generally disfavored," and, absent indicia of legislative intent to dispense with a *mens rea*, a statute will not be held to impose strict liability. *See Commonwealth v. Mayfield*, 574 Pa. 460, 832 A.2d 418, 426–27 (2003) (citations omitted). Although the imposition of strict liability is generally disfavored, this Court has recognized the legislature may create statutory offenses dispensing with a *mens rea* in fields that are essentially non-criminal in order "to utilize the machinery of criminal administration as an enforcing arm for social regulations of a purely civil nature, with the punishment totally unrelated to questions of moral wrongdoing or guilt." *Commonwealth v. Koczwara*, 397 Pa. 575, 155 A.2d 825, 827–28 (1959). The penalty for such offenses concerning the public welfare is generally relatively light. *Id.* at 827.

Although [the statute] does not contain an express culpability requirement, this does not mean the legislature intended to dispense with the element of criminal intent. *See Commonwealth v. Gallagher*, 592 Pa. 262, 924 A.2d 636, 638–39 (2007) (mere absence of express mens rea requirement in statutory crime is not indicative of legislative intent to impose strict liability (citations omitted)). Rather, "there is a long-standing tradition, which is reflected in the plain language of [§ ] 302, that criminal liability is not to be imposed absent some level of culpability." *Id.* at 639.

*Commonwealth v. Moran*, —— Pa. ——, 104 A.3d 1136, 1149 (2014) (citations modified).

A criminal statute that imposes absolute liability typically involves regulation of traffic or liquor laws.... Along these same lines, an additional factor to consider when determining if the legislature intended to eliminate the *mens rea* requirement from a criminal statute is whether the statute imposes serious penalties. The more serious the penalty, such as a lengthy term of imprisonment, the more likely it is the legislature did not intend to eliminate the *mens rea* requirement (unless the legislature plainly indicates otherwise in the language of the statute, as for statutory rape).

*Commonwealth v. Hurst,* 889 A.2d 624, 628 (Pa.Super.2005).

*Moran* involved a charge of bribery. Because the crime was "not a regulatory measure aimed at safeguarding the public welfare and health," and because the crime was punishable by a three-year prison sentence, the Court determined that it was not a strict liability crime. *Moran,* 104 A.3d at 1149. In *Hurst,* we concluded that the statute for accidents involving death or personal injury while not properly licensed was not a strict liability crime because of the possible two-year prison sentence and the nature of the offense, which included a causation element. Thus, the statute required a mens rea. *Hurst,* 889 A.2d at 628.

■ While section 912 can be described as safeguarding public welfare by prohibiting weapons in or near schools, it is not a regulatory measure or a non-criminal, social regulation, such as a traffic law. Further, as a first-degree misdemeanor, it is

punishable by a maximum of five years in prison. *See* 18 Pa.C.S.A. § 106(b)(6). Based upon these factors, and in light of *Moran* and *Hurst,* we conclude that section 912 is not a strict liability crime.[3]

Because section 912 is not a strict liability crime, the Commonwealth must prove that Giordano acted intentionally, knowingly, or recklessly. *See* 18 Pa.C.S.A. § 302(b). Knowingly, as a level of culpability, is defined as:

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

18 Pa.C.S.A. § 302(b).

■ Here, the testimony reflects that Giordano knew that he had his sword and knew that weapons were not permitted in school buildings. He admitted such knowledge when he stated that he did not take the sword into a building that posted that no weapons were allowed and when he stated that he did not take the sword into the district's elementary and middle schools. Therefore, Giordano knew that his conduct was in the nature of that prohibited by the statute. Giordano's sufficiency challenge fails.

■ We turn to Giordano's challenge to the weight of the evidence.

---

**3.** While we are not bound by the decisions of the Commonwealth Court, that Court, in *dicta,* reached the same conclusion. *See Bolden v. Chartiers Valley Sch. Dist.,* 869 A.2d 1134, 1138 (Pa.Cmwlth.2005) ("These factors tend to suggest that Section 912 is not a strict

liability offense, particularly because the General Assembly did not explicitly state its intent to make it one. Moreover, the accompanying penalty for a violation of Section 912 is strikingly severe....").

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751–52 (2000); *Commonwealth v. Brown*, 538 Pa. 410, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. *Widmer*, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.' " *Id.* at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Brown*, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. *Brown*, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. *Commonwealth v. Farquharson*, 467 Pa. 50, 354 A.2d 545 (1976). One of the least assailable reasons for granting or denying a new

trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Widmer*, 744 A.2d at 753 (emphasis added).

*Commonwealth v. Clay*, 619 Pa. 423, 64 A.3d 1049, 1054–55 (2013) (citations modified).

██ Giordano argues that the weight of the evidence does not support the conclusion that the administration building is a school building for the purpose of section 912. Giordano's Brief at 19–20. We previously concluded that the evidence was sufficient to prove that the administration building fit within the purview of the statute. Mr. King's testimony regarding the instruction that took place in the building was corroborated by Ms. Joyce. Giordano did not contradict that testimony in any regard. We cannot conclude that the trial court abused its discretion in concluding that the verdict did not shock one's conscience given the testimony regarding the instructional activities that took place in the building. Giordano's weight of the evidence claim lacks merit.

██ Finally, Giordano challenges the discretionary aspects of his sentence. When reviewing such a challenge:

> It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." *Commonwealth v. Austin*, 66 A.3d 798, 807–08 (Pa.Super.2013).

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise state-

ment of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [see Pa.R.A.P. 2119(f) ]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements we will then proceed to decide the substantive merits of the case.

*Id.* (brackets in original).

*Commonwealth v. Antidormi,* 84 A.3d 736, 759 (Pa.Super.2014).

Here, Giordano filed a timely appeal and preserved the sentencing issue in his post-sentence motion. He also included a Rule 2119(f) concise statement in his brief. Therefore, we must determine whether Giordano has raised a substantial question.

 Aside from his recitation of the standards for a challenge to the discretionary aspects of sentence, Giordano's entire argument is as follows:

> Counsel for [Giordano] recognizes that the sentences fell within the statutory limits. However, [Giordano] believes that they were inappropriately harsh and excessive and that this Court should conduct a review of the sentences.

Giordano's Brief at 13.

> Whether a substantial question has been raised is determined on a case-by-case basis; the fact that a sentence is within the statutory limits does not mean a substantial question cannot be raised. *Commonwealth v. Titus,* 816 A.2d 251, 255 (Pa.Super.2003). However, a bald assertion that a sentence is excessive does not by itself raise a substantial question justifying this Court's review of the merits of the underlying claim. *Id.*

*Commonwealth v. Fisher,* 47 A.3d 155, 159 (Pa.Super.2012).

In *Fisher,* the appellant did not cite a specific provision of the sentencing code or a fundamental norm of sentencing that he alleged to have been violated. We held that, without either, the appellant's bald assertion of excessiveness did not raise a substantial question. *Id.* Here, Giordano has made a similar assertion without addressing any provision of the sentencing code or fundamental norm of sentencing. Consequently, we conclude that he has not raised a substantial question. Therefore, we will not review his sentencing claim.

Judgment of sentence affirmed.