J-S15035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN CORCORAN, | |
| Appellant | No. 441 EDA 2015 |

Appeal from the Judgment of Sentence February 6, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0007842-2014

BEFORE: BENDER, P.J.E., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED FEBRUARY 29, 2016**

Appellant, Kevin Corcoran, appeals from the judgment of sentence imposed following his jury conviction of obstructing the administration of law or other governmental function.[1] Appellant, a former Philadelphia Police Officer,[2] challenges the sufficiency of the evidence to support his conviction. We affirm.

The trial court aptly summarized the facts of this case as follows:

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 5101.

[2] Appellant had been a member of the Philadelphia Police Department for ten years when the incident from which this case stems occurred. (**See** N.T. Trial, 11/13/14, at 10). He was fired from the department as a result of his arrest in this case. (**See id.** at 30).

On March 31, 2013, at approximately 2:00 a.m., Thomas Stenberg, Roderick King, Brian Jackson and Sara Tice were crossing Lombard Street at the 1300 block in the City and County of Philadelphia when witness Thomas Stenberg noticed a marked Philadelphia Police SUV make [a] left turn [at a red light]. Mr. Stenberg testified that he said to the group of people that it was an illegal turn. The group of four continued to walk southbound on 13th street when the Police SUV approached them. Appellant . . . immediately got out of the SUV. Thomas Stenberg, Roderick King, Brian Jackson and Sara Tice testified that from observing Appellant's body language, it was apparent that he was angry and he began to "aggressively approach" them. Appellant kept asking if Mr. Stenberg "had a fucking problem with his driving" and grabbed Mr. Stenberg's jacket. (N.T. Trial, 11/12/14, at 37). At this time, Appellant noticed two of the witnesses, Brian Jackson and Roderick King, were recording the incident with their cell phones and he immediately struck the phone out of Brian Jackson's hand. Mr. Stenberg testified that Appellant then approached and grabbed Roderick King by his jacket, eventually knocking his cell phone out of his hand. Mr. Stenberg and Mr. King testified that [Appellant] pushed Mr. King against the SUV, placed handcuffs on him and put him in the back of the SUV. Appellant then drove away. At no point did Appellant ask for Mr. King's identification, whether he had any weapons or tell Mr. King what he was under arrest for. Mr. Stenberg testified that no one made any threats towards Appellant. Additionally, Mr. King testified that he did not attempt to resist arrest.

Following the moments immediately after Appellant drove off with Mr. King in the car, the three remaining witnesses attempted to call the police multiple times. Brian Jackson testified that he was able to find the number to Internal Affairs and called. They were told that a supervisor would be sent out shortly. The three witnesses testified that at no point did another police officer come to the scene to address their concerns.

While in Appellant's police vehicle,[3] and in an attempt to diffuse the situation, Mr. King tried to talk to [Appellant], explaining that he was an Iraq War veteran. Appellant was silent until he asked Mr. King if he "wanted to go back to his fucking friends," whereupon Mr. King said that he did. (*Id.* at 84). Appellant then asked Mr. King if he knew where Appellant picked him up. Mr. King is from Florida and not very familiar with the area and therefore did not know the exact location at which he was taken into custody. Appellant was able to navigate his way back to where Mr. King's three friends were waiting. Approximately 16-17 minutes after Mr. King was initially handcuffed and placed into the Police SUV, he was released at 13th and Rodman Streets.

Lt. Malaki Jones testified that according to Police records, Appellant was assigned to patrol the 17th Police District in the police service area number 2. The 17th [P]olice [D]istrict borders the 3rd Police District. . . . Lieutenant Jones also testified that Appellant was in possession of a patrol log and that the purpose of the patrol log is to keep an account of the officer's activity during his eight-hour shift. Additionally, a device called the Mobile Data Terminal is used by police officers to search for active warrants using personal information such as first and last name and date of birth. Any search done using the Mobile Data [T]erminal is recorded on the Message Scan Details report. Officers use identifying information from the Mobile Data [T]erminal in their patrol log. The patrol log includes a space to indicate that other materials required for vehicle or pedestrian stops were also prepared. These materials are known as a Philadelphia Complaint or Incident Report, commonly referred to as a 7548 or a Philadelphia Police Department Vehicle or Pedestrian Investigation Report, commonly referred to as a 7548A. A 7548 is typically filed even if the person stopped does not formally get arrested.

Lieutenant Jones testified that during the investigation into this incident, he discovered that Appellant was patrolling alone on the evening on March[] 30th. Lieutenant Jones testified that

---

[3] Mr. King repeatedly asked Appellant what he was under arrest for while in the SUV; Appellant eventually stated public intoxication. (*See* N.T. Trial, 11/12/14, at 81).

even though Appellant was patrolling alone on the evening of the incident, Appellant entered information recording responses to five radio calls that he and his partner made during the evening of March 30th in the patrol log. Lieutenant Jones testified that the area of 13th and Rodman, where the incident took place, is in the 3rd Police District, and not in the 17th Police District, where Appellant should have been patrolling. Lieutenant Jones also testified that while there were entries for March 30th on the Message Scan Details Report, there were no entries indicating [Appellant] used the Mobile Data Terminal on March 31st, therefore no record of the name Roderick King was listed. Effectively, Appellant never completed a 7548 or 7548A. Lieutenant Jones then testified that there were multiple 911 calls recorded on the Computer Assisted Dispatch report around the time of 2:19 a.m. lasting until about 2:28 a.m. which specifically included a complaint against the police at 13th and Rodman Street.

Appellant . . . testified that the pedestrian stop with Roderick King was not recorded in his patrol log because he was too busy towards the end of the night. The evidence showed that the last entry in [Appellant's] patrol log was on March 31st at 1:20 a.m. Appellant testified that Roderick King refused to give him his name or date of birth and that is why he never searched his name using the Mobile Data Terminal. At no point did Appellant call for backup although he testified that he felt threatened by the individuals during the pedestrian stop. After Appellant dropped Mr. King off at 13th and Rodman, he forgot to ask for his name in order to record the stop in his patrol log. Appellant testified that he wrote his partner's name on the patrol log out of habit even though he was not present during the shift.

(Trial Court Opinion, 8/05/15, at unnumbered pages 1-5) (footnote, emphasis, and most record citations omitted; record citation formatting provided).

On November 14, 2014, a jury found Appellant guilty of the above-stated offense. On February 6, 2015, the trial court sentenced Appellant to a term of not less than one day nor more than six months' incarceration,

with immediate parole to house arrest for six months, followed by one year of probation. This timely appeal followed.[4]

Appellant raises one question for our review: "Was the evidence presented by the Commonwealth at trial sufficient as a matter of law to convict him of obstructing the administration of law?" (Appellant's Brief, at 2) (unnecessary capitalization omitted). Appellant argues that he did not intentionally breach his official duties as a police officer and that the incident transpired as a result of the disorderly behavior of Mr. King and his friends. (*See id.* at 10-11). Appellant maintains that, instead of following through with a citation to Mr. King, he decided to give him a break because he was a veteran. (*See id.*). Appellant also contends that the record is devoid of evidence that he intentionally failed to prepare appropriate paperwork, and that his testimony reflects that he was very busy during his shift and "forgot to get [Mr. King's] name." (N.T. Trial, 11/13/14, at 51; *see also id.* at 37; Appellant's Brief, at 11-12). This issue does not merit relief.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and

_____

[4] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on March 24, 2015. *See* Pa.R.A.P. 1925(b). The court entered an opinion on August 5, 2015. *See* Pa.R.A.P. 1925(a).

circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Giordano***, 121 A.3d 998, 1002-03 (Pa. Super. 2015) (citations omitted).

The Pennsylvania Crimes Code defines the offense of obstructing the administration of law or other governmental function, in pertinent part, as follows:

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act[.]

18 Pa.C.S.A. § 5101. Thus, "[i]n order to establish that Appellant obstructed the administration of law under section 5101, the Commonwealth must establish that: (1) the defendant had the intent to obstruct the administration of law; and (2) the defendant used force or violence, breached an official duty or committed an unlawful act." ***Commonwealth v. Goodman***, 676 A.2d 234, 235 (Pa. 1996) (case citation omitted).

In evaluating § 5101 convictions, our courts have explained that § 5101 is substantially based upon the Model Penal Code section 242.1. As stated in the comment to section 242.1 of the Model Penal Code "[t]his provision is designed to

- 6 -

cover a broad range of behavior that impedes or defeats the operation of government."

***Commonwealth v. Snyder***, 60 A.3d 165, 175 (Pa. Super. 2013), *appeal denied*, 70 A.3d 811 (Pa. 2013) (case citations omitted).

In the instant case, the trial court found that the evidence clearly supported the jury's conclusion that Appellant, by failing to perform his official duties as a police officer, intentionally obstructed the administration of justice. (***See*** Trial Ct. Op., at unnumbered page 7). After review of the record, we agree.

Specifically, the record reflects that, immediately upon exiting his police vehicle, Appellant aggressively approached Mr. Stenberg and his friends and asked if Stenberg "had any fucking problem with his driving." (N.T. Trial, 11/12/14, at 37; ***see id.*** at 36). In violation of a police directive relating to videotaping,[5] he knocked Mr. Jackson's and Mr. King's cell phones out of their hands to prevent them from recording the encounter. (***See id.*** at 38-39). Appellant did not ask anyone in the group for identification or if they were carrying weapons, did not run their names through the police system to check for active warrants, and did not call for backup. (***See id.*** at

_____

[5] Philadelphia Police Directive 145 provides that "Police personnel shall not threaten, intimidate or otherwise discourage an individual from photographing, videotaping or audibly recording police personnel while conducting official business in any public space." (N.T. Trial, 11/12/14, at 177; ***see also*** Commonwealth's Brief, at 13). Lt. Jones explained that, in addition to following the law, police officers must comply with department directives when performing their official duties. (***See*** N.T. Trial, 11/12/14, at 173-74).

37-40, 77, 117, 135, 153, 171; *see also* N.T. Trial, 11/13/14, at 44, 49). Only after Appellant handcuffed Mr. King and drove away in the SUV did he advise King that he was under arrest for public intoxication. (*See* N.T. Trial, 11/12/14, at 76, 81). However, Appellant did not transport Mr. King to a police station. (*See id.* at 82). Instead, Appellant parked the SUV in a dark alley before returning Mr. King to his friends approximately sixteen minutes after he initially drove away. (*See id.* at 82-84, 86-87).

Although Lt. Jones testified that police procedure requires officers to keep accurate accounts of their activities during their shifts on patrol logs and to file investigation reports to keep a record of the individuals they stop, Appellant admitted that he did not fill out any paperwork, whatsoever, indicating that he had any contact with Mr. King. (*See* N.T. Trial, 11/12/14, at 159-60, 167-68; *see also* N.T. Trial, 11/13/14, at 29, 37, 51-52). Appellant made no record of his arrest of Mr. King in his patrol log; he did not file a report; and he did not notify police radio that he had handcuffed and detained Mr. King. Additionally, despite the fact that Appellant was patrolling by himself during his shift, he wrote his partner's name on his patrol log. (*See* N.T. Trial, 11/12/14, at 162-63, 169; *see also* N.T. Trial, 11/13/14, at 52-53). Thus, the record supports the inference that Appellant intentionally attempted to conceal the encounter with Mr. King.

Based on the foregoing, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that the evidence was sufficient to sustain Appellant's conviction for obstructing the

administration of law by breach of official duty. ***See Giordano***, ***supra*** at 1002; ***Goodman***, ***supra*** at 235. The jury did not find Appellant's version of events and his testimony that he "forgot" to ask for Mr. King's name to document the encounter credible, and it was "free to believe all, part or none of the evidence." ***Giordano***, ***supra*** at 1003. Accordingly, Appellant's sole issue on appeal does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.



Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/29/2016