J-S22025-16

2016 PA Super 145

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| ANDREW JOSIAH GOSLIN | |
| Appellant | No. 1114 MDA 2015 |

Appeal from the Judgment of Sentence June 2, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0005761-2014

BEFORE:  MUNDY, J., DUBOW, J., and STRASSBURGER, J.[*]

OPINION BY MUNDY, J.:                              **FILED JULY 06, 2016**

Appellant, Andrew Josiah Goslin, appeals *pro se* from the judgment of sentence of one year of probation, imposed on June 2, 2015, after the trial court convicted him of possessing a weapon on school property.[1]  After careful review, we affirm.

Our review of the certified record reveals that on November 19, 2014, the Commonwealth filed a complaint charging Appellant with possessing a weapon on school property, after Pennsylvania State Trooper Kendra Kaley "arrived at Providence Elementary School … to contact Principal Christina M. McLaughlin about a previous incident at the school."  Affidavit of Probable

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 912.

Cause, 11/19/14. A bench trial convened on June 2, 2015. Ms. McLaughlin testified that on September 4, 2014, she met with Appellant for the purpose of an "informal hearing" concerning an incident where Appellant's son was found to have possessed a knife on school property. N.T., 6/2/15, at 4-5, 15-18. The purpose of the hearing was to "allow the family and student to discuss and answer any questions they may have and the school administration to ask any questions they may have and review the incident as they know it to have been." *Id.* at 5. Ms. McLaughlin testified as follows.

> At the hearing, during one point of discussion, [Appellant] did state that he had a knife and asked if we would arrest him for having it. At that point, he forcefully placed it on the table in front of people at the meeting.
>
> …
>
> I don't remember whether he was standing or sitting, but I do remember the words were, I have a knife, are you going to call the police on me and then [he] slammed it down on the table in front of him.
>
> …
>
> There was silence in the room and we allowed him to sit and calm down, honestly. That was our hope.
>
> …
>
> At some point after that, he removed it from the table and put it back in his pocket.
>
> …

> I remember it being a strained meeting. He had stated – and the reason I say that is because he seemed very upset that we called the police and had stated that he didn't feel it was our right and that he doesn't appreciate that.
>
> I felt that at some time, quite honestly, that his demeanor was threatening. He looked personally at me and made comments that made me feel that way, saying that you sent armed police to my house and that doesn't go well. I sensed the tone of his feeling was tense at that meeting.

*Id.* at 20-22.

On cross-examination, Ms. McLaughlin clarified that Appellant did not point the knife at anyone, and it was in a "closed state the entire time." *Id.* at 26.

Thereafter, the defense stipulated that Appellant possessed the knife on school grounds. *Id.* at 28. Appellant testified that he left work as a carpenter early to attend the meeting. *Id.* at 29-30. He also testified that he carries the knife with him to work and "every day everywhere." *Id.* at 30. Appellant further explained as follows.

> I carry this knife with me every day because I use it. I use it at work, I use it to sharpen pencils, I use it to open tuna cans when my wife forgets to pack me a tuna can opener. I whittle sticks with my sons.
>
> …
>
> It occurred to me at the moment, oh, my goodness, they called the police on my nine-year-old son for having a whittling knife. I actually have a pocket knife on me now and am I a criminal as well?

> I grew up in the southern end my whole life. It never occurred to me that possessing a pocket knife was a criminal act. It seemed ridiculous.
>
> …
>
> My intention was not to provoke people or to frighten people.
>
> …
>
> My intention in that moment was to say, this is ridiculous. I mean, you send the state police to my home for my nine-year-old son having a whittling knife.

*Id.* at 30-32. Appellant indicated that he put the knife away after the assistant superintendent told him he was "in violation" for having the knife. *Id.* at 32.

Following the testimony of Ms. McLaughlin and Appellant, and closing arguments by counsel, the trial court, in rendering its guilty verdict, gave its detailed reasoning as follows.

> I have reviewed all of the information that was supplied by counsel pursuant to the closing arguments in this case.
>
> I have thoroughly reviewed the statute. And as both sides have I think acknowledged, there is some confusion, I suppose, with regard to the language of the statute.
>
> And I'll say this, [Appellant], I understand your frustration with this scenario. I can speak for myself. When I've looked at some of the situations that have arisen with these policies with regard to weapons on school property, and I'll agree that it appears to me that the balance has not been

properly found yet in terms of what the schools need to do to adequately protect themselves.

We've gone from one extreme back before all of the rash of unfortunate violent offenses on school property to something in the far other direction in terms of what we've done, but that's the environment in which we live at the moment.

…

My view of the plain reading or the plain language in the statute is that the defense is there for some lawful purpose upon which the weapon would be brought onto the school property, that's not the same thing as saying that the weapon wasn't brought there for some unlawful purpose.

I see a distinction between those two, and I guess I would agree with the position the Commonwealth has taken that that defense is there for someone to bring a weapon onto the property for some legitimate reason pursuant to their presence on the school property, and there are probably lots of things.

I think in [Appellant's] case, if [he] had said he brought the knife that [his] son was accused of having and it was the basis of the hearing, [Appellant] brought it from an evidentiary standpoint for the hearing itself, that to me would be some type of an example of bringing a weapon onto the property for lawful purposes.

The hearing was there, it involved that particular item which the school was alleging was a weapon, and if you had said the reason you had it was for that, I could see that's something that probably the statute would cover.

But that isn't the case here. This is a different weapon. It's clearly one that's set forth in the statute as being prohibited. There isn't a question

- 5 -

about you knowing that it was on your person at the time.

…

The statute is clearly created to prohibit weapons from being brought onto school property unless there is a specific reason as carved out in the statute that they are to be viewed as not violating this criminal provision, but I don't think [Appellant's] situation falls within one of those reasons.

So based on my view of the statute and the evidence presented in this case, I do find [Appellant] guilty of violation Section 912(a) of the Crimes Code.

*Id.* at 49-52.

On June 2, 2015, the trial court sentenced Appellant to a year of probation. On June 29, 2015, Appellant filed this timely appeal.[2] As Appellant appealed *pro se*, the trial court convened a *Grazier*[3] hearing on August 11, 2015, and determined that Appellant was competent to proceed *pro se*.

On appeal, Appellant presents a single issue for our review.

Whether the Trial Court erred in appropriately [sic] applying "lawful purpose" under 18 Pa.C.S.A. § 912(c).

What is the definition of "other lawful purpose?"

Appellant's Brief at 6.

---

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

[3] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1988).

In interpreting a statute, our Supreme Court recently provided the following guidance.

> The purpose of statutory construction is to ascertain and effectuate the intent of the legislature. 1 Pa.C.S. § 1921(a). In this respect, the language of the statute is the best indication of this intent; accordingly, where the words of the statute are clear and free from all ambiguity, the letter is not to be disregarded under the pretext of pursuing its spirit. *Id.,* § 1921(b). Only in the event of an ambiguity may we consider other aspects of the statute and the statutory process, and may we discern the General Assembly's intent by considering, *inter alia,* the various factors listed in the Statutory Construction Act, *Id.,* § 1921(c). *See Commonwealth v. Walls*, 592 Pa. 557, 926 A.2d 957, 962 (2007).

*Commonwealth v. Lynn*, 114 A.3d 796, 818 (Pa. 2015).

As noted by both the Commonwealth and the trial court, 1 Pa.C.S.A. § 1921 provides as follows.

> **Legislative intent controls**
>
> (a)   The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
>
> (b)   When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
>
> (c)   When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> (1)   The occasion and necessity for the statute.

(2)   The circumstances under which it was enacted.

(3)   The mischief to be remedied.

(4)   The object to be attained.

(5)   The former law, if any, including other statutes upon the same or similar subjects.

(6)   The consequences of a particular interpretation.

(7)   The contemporaneous legislative history.

(8)   Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921.

Here, the statute at issue reads as follows.

### § 912. Possession of weapon on school property

(a)   Definition.--Notwithstanding the definition of "weapon" in section 907 (relating to possessing instruments of crime), "weapon" for purposes of this section shall include but not be limited to any knife, cutting instrument, cutting tool, nun-chuck stick, firearm, shotgun, rifle and any other tool, instrument or implement capable of inflicting serious bodily injury.

(b)   Offense defined.--A person commits a misdemeanor of the first degree if he possesses a weapon in the buildings of, on the grounds of, or in any conveyance providing transportation to or from any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school.

> (c)  Defense.--It shall be a defense that the weapon is possessed and used in conjunction with a lawful supervised school activity or course or is possessed for other lawful purpose.

18 Pa.C.S.A. § 912.

At trial, Appellant stipulated that he possessed a weapon on school property.  18 Pa.C.S.A. § 912(a) and (b); N.T., 6/2/15, at 28.  He argues, however, that contrary to the determination of the trial court, he possessed his knife for "other lawful purpose."  18 Pa.C.S.A. § 912(c).  Appellant states "there is a lack of clarity regarding the definition and application of other lawful purpose," but asserts that the "vague" term should apply to this case because he "lawfully possessed the knife without any criminal intent or action."  Appellant's Brief at 9, 11.

The Commonwealth counters that the term "other lawful purpose" must be read in conjunction with the surrounding text, and "a resort to the rules of statutory construction reveals that the Legislature certainly intended to criminalize [Appellant's] conduct."  Commonwealth's Brief at 5-6.  The Commonwealth posits as follows.

> [W]here Section 912(c) says that weapons may be possessed on school property "in conjunction with a lawful supervised school activity or course or is possessed for other lawful purpose," the phrase "other lawful purpose" does not mean any lawful purpose whatsoever.  Rather, that "lawful purpose" must in some way be related to a school activity or the reason why the individual is on school grounds.

> Only through this interpretation does Section 912 serve the purpose for which it was enacted.

*Id.* at 13.

In examining what constitutes "other lawful purpose" as stated in 18 Pa.C.S.A. § 912(c), we are presented with a question of first impression. Recently, this Court determined that Section 912 "is not a strict liability crime," and in so concluding, commented that "section 912 can be described as safeguarding public welfare by prohibiting weapons in or near schools." *Commonwealth v. Giordano*, 121 A.3d 998, 1006 (Pa. Super. 2015), *appeal denied*, 141 A.3d 490 (Pa. 2016). We further stated, "[t]he statute is designed to protect students from the presence of weapons where they are learning." *Id.* at 1004. In scrutinizing section 912, we observed that "we must also consider that the General Assembly does not intend an absurd result." *Id.*

Our commentary in *Giordano* comports with the Commonwealth's argument that Section 912, as a penal statute, is subject to strict construction, but "does not require that words of a criminal statute be given their narrowest meaning or that the Legislature's evident intent be disregarded." Commonwealth's Brief at 6, *citing* **Commonwealth v. Campbell**, 758 A.2d 1231, 1236 (Pa. Super. 2000). The trial court also quoted **Campbell** in its statutory construction analysis of Section 912(c). *See* Trial Court Opinion, 9/15/15, at 3.

Here, the words "other lawful purpose" in 18 Pa.C.S.A. § 912(c) "are not explicit" as provided in 1 Pa.C.S.A. § 1921(c). We thus must "ascertain and effectuate the intention of the General Assembly" by considering the eight factors delineated in the statute. *Id.* Further, because there is a scarcity of information pertaining to factors (2), (5), (7) and (8), we focus our analysis on factors (1) the occasion and necessity for the statute, (3) the mischief to be remedied, (4) the object to be attained, and (6) the consequences of a particular interpretation.

Collectively, and at their essence, factors (1), (3), (4), and (6) invoke our public policy of maintaining, and acting to ensure, the safety of those who inhabit our schools. Hence, the occasion and necessity for the statute, the mischief to be remedied, the object to be attained, and the consequences of a particular interpretation, all incorporate the General Assembly's paramount objective of improving school safety. The "mischief to be remedied" and "consequences of a particular interpretation" invoke the numerous and often notorious instances of school violence which have occurred nationwide, including Pennsylvania, since the enactment of Section 912 in 1980.

Bearing in mind our Commonwealth's policy of promoting school safety, *Giordano*, *supra*, we excerpt language from an administrative action, where a school employee/grievant was dismissed for unintentionally

bringing a gun onto school property, and the arbitrator reinstated the school employee/grievant, but commented as follows.

> This grievance presents a dilemma of the utmost importance and sensitivity for the District and the community at large, as well as for the individuals involved, including the Grievant and the students …. The issue of whether this Grievant should be returned to the classroom cannot be approached without full recognition and respect accorded to the motives of the District. The question of weapons in the schools is one of the utmost gravity. Senseless violence in schools, involving deadly weapons, is widely reported. School districts are to be commended for taking the lead in the prevention of such tragic incidents.
>
> However, even heroes on the righteous path sometimes stumble. The truest arrow sometimes finds an unintended mark. So it is in this case. The Grievant, based on the evidence produced at the hearing, is surely not the type of individual envisioned when the policies to eliminate weapons from the schools were created. Nevertheless, he has trespassed on those policies unawares.

*In re SHALER (Pa.) AREA SCHOOL DISTRICT and SHALER AREA EDUCATION ASSOCIATION, PSEA/NEA*, 2003 WL 26566386 (Arbitrator Submitted Award), at 8.

Mindful of the foregoing, we address the "other lawful purpose" exception promulgated in Section 912(c). Although there is no case law on point, the Commonwealth Court, in *dicta*, has stated as follows.[4]

_____

[4] While the decisions of the Commonwealth Court are not binding on this Court, we may look to them for their persuasive value. *See, e.g.,*
*(Footnote Continued Next Page)*

> We need not address [appellant's] argument that …
> his conduct falls within the exception to Section 912
> which states that no crime is committed if [he]
> possessed the gun with a lawful purpose. We note,
> however, that [his] argument ignores that the
> exception to Section 912 only allows the possession
> of a firearm "in conjunction with a lawful supervised
> school activity or course" (meaning, for example, a
> supervised guns awareness program or perhaps a
> firearm safety course) **or for "[an]other lawful
> purpose" (meaning, for example, that an
> investigator, or a security guard, or other
> person who as part of his or her duties carries
> a firearm will not be charged with a crime
> under this section even if he or she is
> possessing a weapon on school grounds).**

**Bolden v. Chartiers Valley Sch. Dist.**, 869 A.2d 1134, 1139 n.7 (Pa.

Commw. Ct. 2005) (emphasis added).

In addition, we reference the trial court's compelling commentary in

this case as follows.

> [T]he … "lawful purpose" must be related to the
> reason why one is on school property.  If not, it
> would allow anyone to bring a variety of weapons
> onto school property so long as the possessor had an
> alternate explanation for possessing the weapon.
> Such an interpretation would nullify the intent of the
> statute by allowing weapons onto school property
> with few limitations.  The statute would only be
> applicable after criminal intent was established, likely
> resulting in the usage of the weapon to injure or kill
> others.  The Legislature did not intend this law to be
> contingent on such a tragedy.  The legislative intent
> of §912 was to ensure that our children and

*(Footnote Continued)* ──────────────

**Commonwealth v. Heredia**, 97 A.3d 392, 395 n.4 (Pa. Super. 2014),
*appeal denied*, 104 A.3d 524 (Pa. 2014).

educators are secure by strictly prohibiting weapons on school premises, regardless of intent.

Trial Court Opinion, 9/15/15, at 4 (footnote omitted).

Consonant with the above, we agree with the trial court. We additionally find that Appellant's argument is obviated by the Commonwealth's irrefutable observation that "the phrase 'other lawful purpose' does not mean any lawful purpose whatsoever." Commonwealth's Brief at 13. The facts before us are not disputed. Appellant did not appear at the school in his capacity as a carpenter, a contractor, an employee, or someone whose purpose in being at the school justified his possession of the knife. Rather, Appellant appeared in his capacity as a parent, with no purpose to possessing the knife on school property. These facts are underscored by Appellant's knowledge that he was going to the school to discuss his son's suspension for possessing a knife at school. Had Appellant been at the school in a capacity which necessitated his possession of the knife, he could avail himself of the "other lawful purpose" defense to possessing the knife on school property. But that is not the case before us. If we were to accept Appellant's interpretation of Section 912(c), we would be sanctioning the presence of weapons on school property in countless scenarios. Such sanction would be contrary to the intent of the General Assembly, which clearly enacted Section 912 to safeguard public welfare by prohibiting weapons in or near schools. *Giordano*, *supra*. We therefore discern no error by the trial court in convicting Appellant of possessing a

- 14 -

weapon on school property, and affirm the June 2, 2015 judgment of sentence.

Judgment of sentence affirmed.

Judge Strassburger joins the opinion.

Judge Dubow files a dissenting opinion.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/6/2016