J-S28036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DERRILL CUNNINGHAM, | |
| Appellant | No. 2832 EDA 2014 |

Appeal from the Judgment of Sentence May 6, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0003737-2013

BEFORE: BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:               **FILED APRIL 06, 2016**

Appellant, Derrill Cunningham, appeals from the judgment of sentence imposed following his jury conviction of murder of the first-degree, carrying a firearm without a license, carrying a firearm in the public streets of Philadelphia, and possession of an instrument of a crime.[1]  Appellant challenges the sufficiency and weight of the evidence to support his first-degree murder conviction.  We affirm.

This case arises from the shooting death of William Tyler (Tyler) on a Philadelphia Street.  The trial court summarized the facts as follows:

> On October 5, 2011, at approximately 2:00 a.m., Richard Fox [(Fox)] and Chelsea Johnson [(Johnson)] were having a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(a), 6106(a)(1), 6108, and 907(a), respectively.

conversation on Market Street between 62nd Street and North Robinson Street in West Philadelphia, where Johnson was waiting for her meal to be prepared by a nearby Chinese restaurant. Angel Rozier [(Rozier)], Patricia Brown [(Brown)], Atiya Turner [(Turner)], and Daryl Edwards [(Edwards)] were socializing on the corner of 62nd Street and Market Street. [Appellant] approached Fox and Johnson from Kif's Hookah Bar, located across Market Street, whereupon he asked to hold Fox's firearm. For roughly two minutes, [Appellant] and Fox debated the merits of allowing [Appellant] to possess the gun, during which [Appellant] told Fox that "I'm tired of these niggas keep looking at me, so I got to do what I got to do." Fox then handed [Appellant] his .45 [caliber gun] and [Appellant] concealed the weapon underneath his hoodie. [Appellant] proceeded to walk towards North Robinson Street with Fox following from approximately fifteen feet behind. On the 14 unit block of North Robinson Street, Fox saw [Appellant] remove the pistol from his hoodie. Weapon in hand, [Appellant] approached [Tyler] and yelled "yo" to gain his attention. After Tyler turned to face [Appellant], [Appellant] fired one shot, striking Tyler in the forehead just above his left eyebrow. Having seen Tyler hit the ground, Fox ran towards his vehicle parked on Market Street.

Upon hearing the gunshot, Johnson, Brown, Rozier, and Turner fled towards Turner's Chevy TrailBlazer, got in, and sped away from the crime scene towards a nearby gas station. Moments thereafter, Johnson demanded to return to the Chinese restaurant on Market Street to retrieve her meal. As the group attempted to return to the restaurant via North Robinson Street, Johnson noticed a body lying in front of 14 North Robinson Street. After Turner parked the vehicle, Johnson approached Tyler's body, observed his gunshot wound, and began to hyperventilate. Immediately thereafter, both Brown and Turner called emergency services. At 2:12 a.m., Paramedic Olivia Haven arrived at the intersection of 59th and Vine Street, where she found Johnson hyperventilating on the ground. While Haven was treating her, Johnson explained that she had just seen a murder.

At 2:12 a.m., Officer Tony Waters responded to a radio call to a person with a gun and a male lying down on the ground near 14 North Robinson Street. After exiting his vehicle, Officer Waters observed Tyler lying on the ground near 14 North Robinson Street. After exiting his vehicle, Officer Waters

observed small amounts of blood on the ground and a gunshot wound over the top of Tyler's left eye. Examining the body, Officer Waters discovered neither pulse nor signs of breathing. At 2:25 a.m., EMS Medic 9 arrived at the scene and pronounced Tyler dead. At 3:12 a.m. the same day, Officer Terry Tull of the crime scene unit began to investigate the area surrounding 14 North Robinson Street, whereupon he discovered a single .45 [caliber] automatic PMC[2] fired cartridge casing in front of 12 North Robinson Street.

Shortly after Johnson was released by the paramedics, Fox called Johnson and asked her to meet him, Edwards, and [Appellant] at the intersection of 55th and Media Street in West Philadelphia. Johnson, Rozier, Brown, and Turner each travelled to that location. While waiting for the group of women, [Appellant] confided to Fox that he and Tyler had been involved in a bar fight against each other some days prior to the shooting, causing tension between the two. [Appellant] then explained to Fox and Edwards that "he had to do what he had to do" in relation to the shooting. Upon rendezvousing with the group of women, [Appellant] further explained to all present that he shot Tyler because "he looked like he was reaching for something." Sometime before leaving the area, [Appellant] informed Fox that he had disposed on the handgun used in the shooting.

Within a week of the shooting, detectives conducted interviews with Johnson, Fox, Rozier, Brown, and Turner, all of whom identified [Appellant] as the shooter. Police issued a warrant for [Appellant's] arrest on October 5, 2011. [Appellant] was arrested in Buffalo, New York on October 12, 2012, whereupon he waived extradition to Philadelphia for trial.

(Trial Court Opinion, 8/31/15, at 3-5) (footnotes omitted).

Appellant proceeded to trial in April of 2014, and on May 6, 2014, the jury found him guilty of the above-mentioned offenses. On that same day, the trial court imposed the mandatory sentence of life imprisonment without

_____

[2] Precision made cartridge.

J-S28036-16

the possibility of parole on the first-degree murder conviction, with no further penalty on the remaining convictions. Appellant's timely post-sentence motion was denied by operation of law on September 9, 2014. *See* Pa.R.Crim.P. 720(B)(3)(a). This timely appeal followed.[3]

On appeal, Appellant raises the following questions for review:

I. Is [Appellant] entitled to an arrest of judgment on all charges including murder in the first degree where, as here, there is insufficient evidence to sustain the verdict?

II. Is [Appellant] entitled to a new trial on all charges including murder in the first degree where as here, the greater weight of the evidence did not support the verdict?

(Appellant's Brief, at 3) (some capitalization omitted).[4]

_____

[3] On November 26, 2014, Appellant filed an unsolicited concise statement of errors complained of on appeal, in which he raised two issues challenging the sufficiency and weight of the evidence. *See* Pa.R.A.P. 1925(b); (Rule 1925(b) Statement, 11/26/14, at 1-2). On July 13, 2015, after the notes of testimony from trial were transcribed, the court entered an order permitting Appellant to file a supplemental Rule 1925(b) statement; Appellant declined to do so. On August 31, 2015, the court filed a Rule 1925(a) opinion addressing Appellant's sufficiency and weight of the evidence claims. *See* Pa.R.A.P. 1925(a); (Trial Ct. Op., at 2).

[4] We note that, in his statement of the questions involved and Rule 1925(b) statement, Appellant frames these issue as challenges to the sufficiency and weight of the evidence supporting all of his convictions. (*See* Appellant's Brief, at 3; Rule 1925(b) Statement, at 1-2). However, in the argument section of his brief, Appellant focuses only on his first-degree murder conviction. (*See* Appellant's Brief, at 11-16). Therefore, we agree with the Commonwealth that any arguments relating to his other convictions are waived. *See* Pa.R.A.P. 2119(a)-(b); Pa.R.A.P. 2101; (*see also* Commonwealth's Brief, at 5 n.1).

- 4 -

In his first issue, Appellant challenges the sufficiency of the evidence to support his first-degree murder conviction. (*See id.* at 11-13). This issue is waived and would not merit relief.

> [W]hen challenging the sufficiency of the evidence on appeal, the Appellant's 1925[(b)] statement must specify the element or elements upon which the evidence was insufficient in order to preserve the issue for appeal. Such specificity is of particular importance in cases where, as here, the Appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt. Here, Appellant . . . failed to specify which elements he was challenging in his [Rule] 1925[(b)] statement . . . . While the trial court did address the topic of sufficiency in its opinion, we have held that this is of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion, not in a selective manner dependent on [a party's] argument or a trial court's choice to address an unpreserved claim.

*Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa. Super. 2009), *appeal denied*, 3 A.3d 670 (Pa. 2010) (citations and quotation marks omitted).

Here, Appellant's Rule 1925(b) statement fails to identify which element(s) of first-degree murder the Commonwealth allegedly failed to prove. (*See* Rule 1925(b) Statement, at 1-2). Instead, the statement generically alleges that "The evidence was insufficient as to all charges. The evidence failed to sustain the elements of each and every crime . . . ." (*Id.* at 1). Although the trial court addressed the sufficiency claim in its opinion, "this is of no moment to our analysis because we apply Pa.R.A.P. 1925(b) in a predictable, uniform fashion[.]" *Gibbs*, *supra* at 281 (citation omitted). Accordingly, we conclude that Appellant's sufficiency challenge is waived. *See id.*; *see also Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa.

Super. 2013) (determining that appellant waived sufficiency claim where his "Pa.R.A.P. 1925(b) statement simply provided a generic statement stating '[t]he evidence was legally insufficient to support the convictions'") (record citation omitted).

Moreover, even if Appellant did not waive his sufficiency claim, it would still not merit relief.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Giordano***, 121 A.3d 998, 1002-03 (Pa. Super. 2015), *appeal denied*, 2016 WL 699408 (Pa. filed Feb. 17, 2016) (citations omitted).

The Pennsylvania Crimes Code defines the offense of first-degree murder as a criminal homicide that is "committed by an intentional killing." 18 Pa.C.S.A. § 2502(a). The statute defines "intentional killing" as "[k]illing

by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d).

In order for an individual to be convicted of first-degree murder, "the Commonwealth must prove that a human being was unlawfully killed, that the defendant perpetrated the killing, and that the defendant acted with malice and a specific intent to kill." *Commonwealth v. Johnson*, 107 A.3d 52, 66 (Pa. 2014), *cert. denied sub nom. Johnson v. Pennsylvania*, 136 S. Ct. 43 (2015) (citation omitted). "[T]he period of reflection required for premeditation to establish the specific intent to kill may be very brief; in fact the design to kill can be formulated in a fraction of a second." *Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015) (citation omitted). "Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death." *Id.* (citation omitted). "It is well-settled that specific intent to kill can be established through circumstantial evidence such as the use of a deadly weapon on a vital part of the victim's body." *Johnson*, *supra* at 66 (citation omitted).

Here, because Appellant admits that he committed a criminal act in shooting Tyler, (*see* Appellant's Brief, at 12, 14), the only disputed element is whether he had the requisite malice and intent to kill. *See Johnson*, *supra* at 66. Appellant claims that the evidence fails to establish that he acted with premeditation and specific intent to kill and instead shows that he acted impulsively when hard feelings and hostilities erupted. (*See* Appellant's Brief, at 12-13). We disagree.

- 7 -

Specifically, days before the shooting, Appellant and Tyler were involved in an altercation in a bar, and there was a great deal of tension between the two men. (*See* N.T. Trial, 4/25/14, at 25-26, 98-100). On the morning of the shooting, Appellant approached Fox and repeatedly asked for Fox's gun, stating "I'm tired of these niggas keep looking at me, so I got to do what I got to do." (N.T. Trial, 4/23/14, at 132; *see id.* at 130). Fox gave Appellant his gun, and within seconds, Appellant walked around the corner towards Tyler. (*See* N.T. Trial, 4/25/14, at 57-58, 68). Appellant yelled "Yo" to gain Tyler's attention and then fired a single bullet into Tyler's forehead from a distance of approximately two feet, killing Tyler instantly. (*Id.* at 68; *see id.* at 69-70; *see also* N.T. Trial, 4/24/14, at 16-17; 23-24). Shortly thereafter, Appellant admitted to his friends that he shot Tyler, and explained that "he had to do what he had to do[.]" (N.T. Trial, 4/25/14, at 32; *see id.* at 33; N.T. Trial, 4/23/14, at 162).

Taking this evidence in the light most favorable to the Commonwealth, as verdict-winner, we conclude that it satisfied its burden of proving first-degree murder beyond a reasonable doubt. *See Giordano*, *supra* at 1002. Specifically, the evidence demonstrates that Appellant sought out and obtained a gun; immediately approached Tyler; called out to him to gain his attention; and shot him in the forehead, a vital part of the body, (*see Johnson*, *supra* at 66), from a close distance, killing him instantly. Additionally, Appellant made statements to friends immediately before and soon after the shooting evidencing premeditation in killing Tyler. Thus, the

record reflects that Appellant "possessed the conscious purpose to bring about [Tyler's] death" and belies his contention he lacked specific intent. *Hitcho*, *supra* at 746. Accordingly, Appellant's first issue would not merit relief, even if he did not waive it.

Appellant next challenges the weight of the evidence supporting his first-degree murder conviction.[5] (*See* Appellant's Brief, at 13-16). In his argument, Appellant essentially reiterates his sufficiency claim, asserting that the evidence does not establish premeditation and specific intent to kill. (*See id.* at 14). In support, he discusses law relating to both the weight and the sufficiency of the evidence. (*See id.* at 13, 15). This issue does not merit relief.

Preliminarily, we observe that Appellant's argument challenging the element of intent and conflating the standards for weight and sufficiency of the evidence is not a proper weight claim. "This Court has long recognized that [a] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014) (citation and internal quotation marks omitted). Therefore, Appellant's argument fails for this reason.

---

[5] Appellant preserved his weight claim by raising it in a post-sentence motion. *See* Pa.R.Crim.P. 607(A)(3).

Moreover, the record fully supports the trial court's ruling on this issue. The applicable standard of review is as follows:

The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and quotation marks omitted). "[T]he trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." *Commonwealth v. Weathers*, 95 A.3d 908, 911 (Pa. Super. 2014), *appeal denied*, 106 A.3d 726 (Pa. 2015) (citation omitted). When reviewing a weight claim, this Court carefully considers the findings and reasons advanced by the trial court, because the trial judge had the opportunity to hear and see the evidence presented. ***See***

*Commonwealth v. Brown*, 48 A.3d 426, 432 (Pa. Super. 2012), *appeal denied*, 63 A.3d 1243 (Pa. 2013).

Here, the trial court determined:

> . . . the jury heard testimony from numerous police officers, detectives, and eye-witnesses and was able to assess each of their credibility as a witness. The jury had the full opportunity to evaluate the substance of their testimony as well as their presentation at trial in making the relevant factual determinations. Similarly, the jury heard testimony from the medical examiner, which corroborated the collective account of the shooting, and the jury was able to assess his credibility. The jury verdict, reflecting the assessment of all the evidence presented at trial, was not so contrary to the evidence presented at trial as to "shock one's sense of justice." Therefore, this court finds no merit in [Appellant's] challenge to the weight of the evidence presented at trial.

(Trial Ct. Op., at 12-13).

After review of the record, we cannot conclude that the court's decision constituted a palpable abuse of discretion. *See Boyd*, *supra* at 1275. The jury, as finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, was free to believe all, part, or none of the evidence presented at Appellant's trial, and its verdict of guilt on the first-degree murder charge does not shock one's sense of justice. *See id.* at 1274. Accordingly, Appellant's second issue does not merit relief.

Judgment of sentence affirmed.

Judge Lazarus joins the Memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/6/2016