J-S12026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ONEARL ISSAC PARKER, III | : | |
| | : | |
| Appellant | : | No. 1458 MDA 2022 |

Appeal from the Judgment of Sentence Entered September 8, 2022
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0000823-2020

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED AUGUST 28, 2023**

Onearl Isaac Parker, III (Appellant), appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his open guilty plea and convictions of criminal attempt (attempted homicide), aggravated assault, persons not to possess a firearm, firearms not to be carried without a license, delivery of marijuana, and possession with intent to deliver (PWID).[1]  The trial court imposed an aggregate sentence of 18 1/2 to 40 years' incarceration.  Appellant complains the trial court's aggregate sentence, including consecutive sentences, was so manifestly excessive as to

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S. §§ 901(a), 2702(a)(1)(4), 6105(a)(1), and 6106(a)(1); **see also** 35 P.S. §780-113(a)(30).

constitute an abuse of the court's discretion. Based on the following, we affirm.

## I.    Facts and Procedural History

At his open guilty plea, Appellant agreed to the following material facts as presented by the Commonwealth:

On Christmas night of 2019, the victim [Simon Joseph] and [Appellant] had a long-standing relationship of approximately four to five years where the victim would [meet up with] [Appellant] on a somewhat weekly basis, purchase a small amount of marijuana. On this particular night, [Joseph] met up with [Appellant] and purchased this amount of marijuana where he gave [Appellant] $70 in exchange for approximately 10.62 grams of marijuana. He did question the amount of the marijuana that he had been given. [Appellant] began to act strange, wanted to take the marijuana back from the victim, and started walking in circles. At one point, [Joseph tried] to leave the scene. When he turned his back to leave, [Appellant] began to shoot him multiple times. Once [Joseph] was down on his knees, he was pistol-whipped in the back of his head with the gun.

[Appellant] then pointed the gun at [Joseph's] head and pulled the trigger; however, the gun was out of bullets at this point.

[Appellant] took off running at which point [Joseph] was rushed to Lancaster General Hospital where he received lifesaving medical treatment, and without this treatment he would have died.

After an investigation by the Manheim Township Police Department, [Appellant] was arrested the following day. [A s]ubsequent search warrant of [Appellant]'s apartment yielded over two pounds of marijuana and drug paraphernalia along with a firearm that was found on [Appellant]'s bathroom floor. This firearm was tested ballistically and found to match the fired shell casings that were found at the shooting scene.

It was determined that [Appellant] was a person not to possess as he had two prior adjudications in 2011, one for aggravated assault and one for a robbery.

He also did not possess a valid license to carry this firearm.

N.T., 3/21/22, at 9-10.[2]

Appellant was subsequently charged with criminal attempted homicide, aggravated assault, prohibited possession of a firearm, carrying a firearm without a license, delivery of marijuana, and PWID. **See** Information, 2/28/22.

On March 21, 2022, Appellant entered an open guilty plea to all six counts. **See** N.T., 3/21/22, at 9. The trial court ordered the completion of a pre-sentence investigation (PSI), including a mental health evaluation. **See** **id.** at 14; **see also** Order, 3/22/22. On September 8, 2022, the trial court imposed an aggregate sentence of 18 1/2 to 40 years' incarceration. Specifically, Appellant was sentenced to the following: (1) a term of 17 1/2 to 35 years' incarceration for the attempted homicide conviction; (2) a concurrent term of six to 12 years' imprisonment for persons not to possess firearms; (3) a concurrent term three-and-one-half to seven years' incarceration for firearms not to be carried without a license; (3) a concurrent

_____

[2] Appellant disputed the allegations that he "pistol-whipp[ed] [Joseph] and [stood] over him with the empty gun," but otherwise agreed with the Commonwealth's recitation of the facts. N.T., 3/21/22, at 11. Counsel noted that despite the factual dispute, "the elements of the crime are still present." **Id.**

- 3 -

term of one to five years' imprisonment for delivery of marijuana; and (4) a consecutive term of one to five years' incarceration for PWID. **See** N.T., 9/8/22, at 18-19. The aggravated assault conviction merged with the attempted homicide conviction for sentencing purposes.[3]

On September 15, 2022, Appellant filed a timely motion to reconsider his sentence. He alleged it was "shocking, cruel, and totally insensitive" that the trial court inflicted a near-maximum sentence, despite the presence of mitigating factors including his "acceptance of responsibility, remorse, mental and emotional health issues, and the lack of any significant record or violence." Appellant's Motion to Reconsider Sentence, 9/15/22, at 1. The trial court denied Appellant's post-sentence motion the next day.[4]

Appellant subsequently filed a timely notice of appeal, followed by a timely, court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on

---

[3] The court also ordered Appellant to pay restitution in the amount of $454.52. **See** N.T., 9/8/22, at 19.

[4] Nearly two weeks later, the trial court received a handwritten *pro se* submission from Appellant amending his post-sentence motion to include an ineffective counsel claim, based on counsel's "fail[ure] to have a mental health professional/expert evaluate [Appellant] after the court's evaluator diagnosed [him]," allegedly prejudiced remarks by defense counsel during sentencing, and a breakdown in communication with defense counsel about subpoenas and his first plea offer. He also reiterated the discretionary sentencing claims already set forth by defense counsel. Appellant's *Pro Se* Letter, 9/27/22, at 1 (unpaginated). The court ordered the *pro se* correspondence be entered on the docket on October 11, 2022, and served on the parties. **See** Order, 10/11/22, at 1.

- 4 -

appeal. *See* Notice of Appeal, 10/17/22; *see also* Appellant's Statement of Errors Complained of On Appeal, 11/15/22.[5] The trial court issued a Pa.R.A.P. 1925(a) opinion on December 7, 2022.

## II.   Statement of Issue on Appeal

Appellant raises the following issue on appeal:

I.      Was the trial court's aggregate sentence of 18.5 to 40 years of incarceration so manifestly excessive under the circumstances of the instant case, especially considering [Appellant]'s circumstances, and was the imposition of consecutive sentences an abuse of the court's discretion?

Appellant's Brief at 6.

Appellant's argument that his sentence was manifestly excessive in light of his personal circumstances and the court's imposition of consecutive sentences presents an issue regarding the discretionary aspects of sentencing.

## III.   Standard of Review

The standard of review for discretionary aspects of sentencing is well-settled as an abuse of discretion. "[T]here is no absolute right to appeal when challenging the discretionary aspect of a sentence. . . .  Rather, an [a]ppeal is permitted only after this Court determines that there is a substantial question that the sentence was not appropriate under the sentencing code."

---

[5] Additionally, on April 24, 2023, Appellant filed a letter with this Court, requesting copies of his guilty plea transcripts. *See Pro Se* Letter, 4/23/23. That same day, this Court forwarded Appellant's *pro se* letter to his counsel pursuant to **Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011). **See Jette** Letter, 4/24/23.

*Commonwealth v. Dodge*, 77 A.3d 1263, 1268 (Pa. Super. 2013) (internal citations & quotation marks omitted).  Further, it merits mention that a guilty plea without any sentencing restrictions does not bar a discretionary sentencing claim.  *See Commonwealth v. Hill*, 66 A.3d 365, 367 (Pa. Super. 2013).  In order to successfully preserve a discretionary sentencing challenge, an appellant must satisfy the following test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

The determination of whether a substantial question has been raised is made "on a case-by-case basis; the fact that a sentence is within the statutory limits does not mean a substantial question cannot be raised." *Commonwealth v. Giordano*, 121 A.3d 998, 1008 (Pa. Super. 2015) (internal citation omitted).  We have held before that a substantial question is raised where an appellant notes "an excessive sentence claim [ ] in conjunction with an assertion that the court failed to consider mitigating factors." *Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (citation omitted); *see also Dodge*, 77 A.3d at 1271-72 (holding that a substantial question was found where [an a]ppellant challenged

unreasonableness of sentence in combination with trial court's failure to consider nature of the defendant's offenses, despite aggregate sentence falling within standard guidelines range).

Here, the record reflects that Appellant has fulfilled the first three requirements required to warrant appellate review of a discretionary sentencing claim. Appellant satisfied the first two prongs by timely filing both a motion to reconsider his sentence and notice of appeal.[6] Appellant also included a compliant Rule 2119(f) statement in his appellate brief. **See** Appellant's Brief at 10. Finally, Appellant has raised a substantial question by combining his claim of an excessive sentence with an allegation that the trial court failed to consider his mitigating factors and rehabilitative needs when assigning his sentence. **See Caldwell,** 117 A.3d at 770. Appellant has therefore satisfied all elements required to grant appellate review.

## IV. Analysis

In his sole argument on appeal, Appellant avers that the trial court failed to adequately consider his personal mitigating circumstances and rehabilitative needs and, as a result, imposed a sentence that was "so manifestly excessive as to constitute an abuse of discretion." Appellant's Brief at 16. Appellant claims the court should have considered the following

---

[6] **See** Appellant's Motion to Reconsider Sentence at 1-2; **see also** Notice of Appeal, 10/17/22.

mitigating evidence: (1) his substance abuse problems; (2) he erroneously believed he was being robbed by the victim; (3) his mental health issues in addition to his drug and alcohol usage "triggered a paranoia attack and false belief, causing him to do what he did[;]"[7] and (4) he expressed remorse at sentencing and accepted responsibility by pleading guilty to all charges. *See id.* at 18-20. Appellant concludes, "Although the [trial c]ourt claims to have taken the above mitigation into consideration, the resulting sentence does not reflect that. There was no need to warehouse [Appellant] for that extreme length of time." *Id.* at 20.

The trial court's breadth of discretion at sentencing is well-settled:

> [S]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. Moreover, the sentencing court has broad discretion in choosing the range of permissible confinements which best suits a particular defendant and the circumstances surrounding his crime. . . . [I]n imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent with another sentence being imposed.

*Commonwealth v. Hill*, 66 A.3d 365, 370 (Pa. Super. 2013) (internal citations and quotation marks omitted). We have held that the trial court's sentence is presumed to be thoroughly reasoned and should be upheld except in extreme circumstances:

> When imposing sentence, the trial court is required to consider the particular circumstances of the offense and the

---

[7] Appellant's Brief at 19.

character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation. However, where the sentencing judge had the benefit of a pre-sentence investigation report ("PSI"), it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

[Moreover,] [w]hen imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S.A. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on the victim and community, and rehabilitative needs of the defendant. . . . Furthermore, [a] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence[.] The sentencing court, however, must also consider the sentencing guidelines.

*Commonwealth v. Clemat*, 218 A.3d 944, 959-960 (Pa. Super. 2019)

(internal citations omitted).

Here, a review of the record reveals the following. The trial court had the benefit of the PSI. *See* N.T., 3/8/22, at 3. Appellant had a prior record score (PRS) of five. *See* N.T., 9/8/22, at 4; *see also* Guideline Sentence Forms, 4/27/22. The offense gravity score (OGS) for each of his convictions are as follows: (1) criminal attempt (attempted homicide) was 14, (2) aggravated assault was 11, (3) persons not to possess a firearm was 11, (4) possession of a firearm without a license was nine, (5) delivery of marijuana was three, and (6) PWID was five. The applicable sentencing guidelines provide that the standard ranges were: (1) 210 to 240 months' imprisonment for attempted homicide; (2) 90 to 108 months' incarceration for aggravated

assault;[8] (3) 72 to 90 months' imprisonment for persons not to possess a firearm; (4) 42 months' incarceration for possession of a firearm without a license;[9] (5) six to 16 months' imprisonment for delivery of marijuana, and (6) 12 to 18 months' incarceration for PWID. **See** Pennsylvania Commission on Sentencing Guideline Sentence Form, 4/27/22, at 1-7. Each sentence fell within the standard guidelines range for the corresponding offense. **See** Trial Ct. Op., 12/7/22, at 5.

Moreover, at the September 8, 2022, sentencing proceeding, the Commonwealth emphasized the gravity of Appellant's conduct, stating "the only set of circumstances . . . that makes us not here for a homicide sentencing as opposed to an attempted homicide sentencing is the fact that [Appellant] ran out of bullets[.]". N.T., 9/8/22, at 5. The Commonwealth further stated the victim "is very lucky to be alive" because he "suffered serious bodily injury." **Id.** at 6. The Commonwealth asked the court to hold

_____

[8] A deadly weapon enhancement was applied to the attempted homicide and aggravated assault sentences.

[9] Our review of the sentencing guidelines indicates that the standard range for the offense of possession of a firearm without a license — where the OGS is nine and the PRS is five — is a term of 48 to 60 months. **See** 204 Pa. Code § 303.16(a). Appellant does not raise an argument regarding the different ranges. In any event, Appellant received the benefit because his sentence would have fallen in the mitigated range.

Appellant "accountable for what he's done and fashion a sentence that is in accordance with the sentencing guidelines." *Id.*[10]

Defense counsel argued that Appellant is not "a person that has been engaged in violent behavior[.]" N.T., 9/8/22, at 7. Counsel also highlighted the purported role played by mental illness and addiction in Appellant's wrongful conduct, as well as Appellant's acceptance of responsibility. *See* N.T., 9/8/22, at 6-10. Counsel stated: "[T]here's no doubt in my mind that something happened there that triggered the paranoia in [Appellant] where [he] felt that he was going to be robbed [by the victim]." *Id.* at 7-8.

Appellant also invoked his right to allocution, reciting a letter he wrote to the victim and the trial court:

> I want to apologize to the victim for the pain I caused and inflicted. I'm deeply sorry. I'm remorseful. I also want to apologize to the victim's parents because I have a son and I don't know what I would do in [a] situation like this if it happened to my son. I also want to apologize to everybody here, like the courts and everybody, for exhausting your resources on a crime that . . . should not have been committed in the first place.
>
> I'm not a bad person. I made a mistake. Some mistakes are worse than others. I'm truly sorry for everything.
>
> Your Honor, I inflicted a lot of people with a bad decision I made. I ask that you shed a light on my lack of record and the fact that this is my first time being incarcerated in Lancaster

---

[10] The Commonwealth also raised at sentencing that a prior "psychiatrist [gave] the implication that [Appellant] was playing up some [of] the [mental health] criteria that he presented because that was a court-ordered evaluation," referring to a discrepancy in some diagnoses between his 2011 and 2022 evaluations. N.T., 9/8/22, at 5.

County Prison, and I'm going to make it my last. I don't want to waste my life in jail. And just I hope I can get a second chance. I hope I can get a second chance because I still have goals I want to accomplish.

My first goal is to get another trade and a job. I want to be a productive person in society and still have a chance to see my kids grow up and everything, do everything the right way, raise them the right way. And I apologize. That's all.

N.T., 9/8/22, at 10-11.

Later in the proceeding, the trial court extensively discussed Appellant's background and its reasoning behind the sentencing, even lamenting the difficulty of determining an appropriate sentence:

I will note for the record that I have considered the penalties authorized by the legislature. I've considered the sentencing guideline as submitted and applicable ranges. I've considered facts and circumstances of the underlying offenses. I've considered the entirety of the presentence investigation, including all attachments, those attachments being court documentation regarding the current offenses, a 2011 psychological evaluation conducted by Dr. Hugh Smith[, Ph.D.], and a 2022 psychological evaluation ordered as part of the presentence investigation by Dr. [Zoë Selhi, M.D.]. I've also considered, with great consideration, the extent of the sentencing memorandums submitted by counsel for the [Appellant] and all of the letters attached thereto. I've considered the position of the [prosecutor], the comments of [defense counsel] and the [Appellant]'s comments here today. I've considered the [Appellant]'s rehabilitative needs, the need for there to be a deterrence and the need for the protection of the entire community.

\* \* \*

It is noted that the troubled foster placements led to certain emotional and mental distress on the part of [Appellant], aggressive outbursts on the part of [Appellant] and a delayed ability to speak. In addition, [Appellant] was subject to violence as a child in Philadelphia.

- 12 -

\*   \*   \*

As noted, [Appellant] is high school graduate, having graduated from the Warwick School District in 2015. There was also certain vocational technical training [Appellant] received during his academic years. It is noted that [Appellant] did and was subject to an Individualized Education Plan and there was a noted history of certain emotional behavior difficulties during his academic years.

As discussed, [Appellant] has a 2011 juvenile conviction for aggravated assault and robbery. There's another juvenile misdemeanor conviction. As an adult there's a 2014 disorderly conduct and paraphernalia, in 2015 a small amount of marijuana, and in 2016 criminal trespass, theft from a motor vehicle and other minor offenses.

[Appellant] does have a notable mental health history that was reflected in detail in the [PSI] and in all reports that I reviewed. [Appellant] was diagnosed with [attention-deficit disorder (ADD), attention-deficit/hyperactivity disorder (ADHD)], Mixed Reception Expressive Language Disorder and potential academic concerns at a young [age]. There was some treatment of those as a teen. In a 2011 [Doctor] Hugh Smith report it spoke about the potential diagnosis of Disruptive Behavior Disorder and cannabis abuse.

In 2020, the most recent report, reflected [post traumatic stress disorder (PTSD)], substance abuse disorder, ADD, potential persuasive development disorder and potential intellectual development disorder. There were additional evaluations contained in [Appellant's] sentencing memorandum, which also reflected similar diagnoses.

In addition, [Appellant] has a notable drug and alcohol history, again, using alcohol sporadically between the ages of 13 and 14. From the ages of 20 and 21 until his current incarceration, [Appellant] was using alcohol on a daily basis. It is noted that [Appellant] considers himself to be an alcoholic and three times suffered from alcohol poisoning. [Appellant] began using marijuana at age 12 and there's a long-term daily usage of marijuana. In addition, there was use of Xanax beginning at ages 13 and 14 that was daily between the ages of 18 and 21, Percocet beginning at age 18 daily until the time of his current incarceration

- 13 -

and certain other experimentation between the ages of 20 and 21 involving the use of Ecstasy, methamphetamine, [phencyclidine piperidine (PCP)] and cough syrup. There's no history of any drug or alcohol counseling or treatment.

It is noted that [Appellant] has a sporadic employment history having worked in packing facilities, demolition work and food service, however, [Appellant] also has a demonstrable history of receiving Social Security disability payments.

[Appellant], I will tell you when I was a practicing attorney maybe I thought judges had it easy. I thought judges would look at the sentencing guidelines and make sentencing decisions easily. I have learned over the last nine years this job is far from easy because I have to take into account the entirety of the situation, the entirety of what happened, the entirety of who you are as a person and what your needs may be. And I will tell you that that is not an easy job. . . .

I have no doubt you are remorseful. . . . And [defense counsel] is right that you stepped up and accepted responsibility. And that will be considered. . . .

[B]ut on the other hand, everything [the prosecutor] said is absolutely correct too. But for running out of bullets, we can only fear where we would have been today. . . .

As much as I'm sympathetic to your situation, I can tell you that selling drugs, whether it be other drugs or whether it be marijuana, has an absolutely detrimental effect on his community. And all of that, in its entirety, is what I have to weigh and what I have weighed. I have no doubt that a sentence of incarceration is warranted, because a lesser sentence would depreciate[] the seriousness of your actions.

N.T., 9/8/22, at 16-18.

In its Rule 1925(a) opinion, the trial court again cited the seriousness of Appellant's conduct as a determining factor in assigning his sentence, stating:

In sentencing Appellant in the instant matter, the court was guided by an extensive [PSI]. In fashioning sentence, the court gave thoughtful consideration to: the penalties authorized by the Legislature; the sentencing guidelines and all of the applicable ranges, including the standard aggravated and mitigated ranges; the facts and circumstances of the current offenses; the [PSI] and all attachments thereto, including a 2011 psychological evaluation conducted by Dr. Hugh Smith and a 2022 psychological evaluation . . . by Dr. [Selhi]; the comments made by the attorney for the Commonwealth; the comments of Appellant's attorney; the position of Appellant; the sentencing mitigation memorandum submitted by Appellant; Appellant's rehabilitative needs; the need for there to be a deterrence; and, the need for the protection of the entire community.

The court extensively considered and discussed Appellant's age, the troubled nature of his formative years, the abuse that Appellant had witnessed and suffered, Appellant's positive relationship with his mother, the strong bond that Appellant shares with his two children, his educational background, his criminal history, his mental health history, his drug and alcohol history, his sporadic employment history, his physical health, and the sincerity of his remorse for his actions. In addition, the court openly discussed the difficulty that was presented by sentencing in this matter.

As reflected in the aforementioned comments and considerations noted by the court, th[e] court found sentencing in this matter to be a difficult task. The court believes that sentences in the standard range were appropriate and that any lesser sentences would depreciate the seriousness of this conduct. In addition, th[e] court could not overlook the fact that Appellant both attempted to end the life of a fellow citizen and engaged extensively in dealing drugs within the community. As such, the imposition of a sole consecutive sentence is not excessive or unreasonable.

Trial Ct. Op. at 7-8 (citations omitted).

Pursuant to our standard of review, we conclude the trial court did not

abuse its discretion with regard to Appellant's sentence for several reasons.

First, we note that "[w]here the sentencing court impose[s] a standard-range

- 15 -

sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive." **Bankes**, 286 A.3d at 1307-1308 (internal quotation omitted). As mentioned above, the trial court had the benefit of a PSI when it imposed Appellant's standard range sentences.

Second, contrary to Appellant's assertions, it is clear the trial court carefully considered his personal history and rehabilitative needs, as well as his personal letter, openly acknowledging them at the sentencing hearing and in its Rule 1925(a) opinion as recited above. Furthermore, with respect to Appellant's complaint that the trial court failed to consider his expression of remorse, the court explicitly stated it took that into consideration. **See** Trial Ct. Op. at 8. Appellant fails to accept that even considering the mitigating factors detailed in the PSI and at the sentencing hearing, the trial court found, after careful deliberation, a significant sentence of incarceration was warranted in light of the seriousness of Appellant's conduct and the protection of the community. **See** 42 Pa.C.S. § 9721(b); **Clemat**, 218 A.3d 944, 959-960. Nonetheless, the trial court acknowledged Appellant's difficult past and circumstances, ultimately imposing standard range sentences based on the gravity of the offense. **See id.** For the foregoing reasons, we discern the trial court was within its discretion regarding Appellant's aggregate sentence. Accordingly, Appellant's challenge to the discretionary aspects of his sentence fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/28/2023